Good morning, Your Honors. I'm Ina Lipkin on behalf of the petitioner. In this matter, the Board of Appeals erroneously affirmed the IJ's denial of asylum withholding and care at relief, which was based purely on speculation and conjecture and not on the case law of the circuit. There are two inconsistencies that the Board brought up, which, in fact, are minor and trivial and have no bearing on the heart of the claim. Unlike the Respondent's arguments on appeal, this case is not governed by the Real ID Act, as the petitioner's asylum application was filed in February 2004 and the act was enacted May 11, 2005. Therefore, the petitioner correctly argued, both before the Board and before this Court, that if an inconsistency did not go to the heart of the claim, it is an improper basis for an incredibility finding. Well, let me talk about the heart of the claim. Among other errors and omissions in the record, the BIA and the IJ pointed to Kumar's might be forgiven under certain circumstances. But then various mistakes regarding his father's name in the documents he did provide, including his school records, and discrepancies in his testimony as to when he allegedly applied for and received his passport in the first instance. Don't these inconsistencies go to the heart of his claim? They would if they were material. But petitioner argues they are not for the following reasons. First of all, in all the documents he submitted, the father's first name, Regender, appeared to be the same. He explained that some of the differences in the last name, whether it be Singh or the other one that started the letter P, had to do either with clerical errors in the issuing agency that gave the document or for reasons that, cultural reasons, that his father might use a different name. If he wanted to present fake documents, I would think he would get them all with the same name. But all he could do was ask for documents to be sent to him. He had no control over their production or their content. And if the government truly believed that there was something fishy with the documents, they could have sent them out to forensics. This Court has repeatedly relied on Kumar v. Gonzalez to admonish the IJ from relying on speculation and conjecture and becoming a forensics expert and finding that there's something wrong with the document when there's really no evidence except their own ideas of the origination of the documents. Well, I believe the IJ also made an alternative finding. Is that correct? In terms of persecution. So even if he were deemed credible that, even if he had established past persecution, that the government had rebutted that, would you address that issue? Absolutely. First of all, this case was decided in 2005, and the background documents are a bit dated. The IJ relied on Exhibit 7, a 1997 report on the Punjab. But even so, she glossed over those sections of the report that would have supported the petitioner's claim and cherry-picked other areas that were seemingly adverse. However, if, for example, the Court looks at page 282 of the administrative record, it clearly states that the police have the ability to locate wanted individuals. Now, the IJ and then the board relied on the supposition that the petitioner lived in Delhi without any problems, and therefore, why doesn't he return to Delhi? He's a Hindu. No one's going to find him there. Completely ignoring his credible testimony that he lived in hiding. He was only there for a month and a half. There was very little testimony drawn out during cross by the government attorney about exactly what he did day-to-day. But basically, he stated, I was too scared to leave. I stayed indoors. Therefore, there's no reason to believe that he made himself available to be found by the authorities, and we cannot expect him to return and live in hiding for the rest of his life throughout India. Again, the background documents, in fact, do reveal that if the police have an interest in an alleged suspect, they can find him and they can locate them. What's our standard of review here? Well, in reviewing credibility determinations that are adverse, this Court must review under the substantial evidence standard. So even if there is substantial evidence on both sides, if they find substantial evidence, doesn't that satisfy the standard of review, even though there is other evidence? You spoke about cherry-picking. Right. But if there's substantial evidence to support the Board and the IJ, don't we have to deny the petition? You do, but in fact, that doesn't exist in this case because the Board, again, erroneously relying on the IJ's opinion, found really just two inconsistencies. One was the date that he allegedly asked for the passport to be issued, and the other was the timing of his friend Noor Ali's phone call to him. Let me briefly address both. In terms of the issuance of the passport, the IJ herself admitted that she's relying on speculation when she stated that, well, there must be something out there, some evidence to show that it wouldn't take the Indian government four years to issue the passport. Where is this evidence? If she believed that such evidence existed, she could have charged the parties to produce it, but it didn't exist. That was based on her speculation and improper conjecture. In regards to the inconsistency, whether it took three weeks or three months for Mr. Noor Ali to contact the petitioner, wholly irrelevant, completely immaterial. Now, I can understand that the Court might doubt the plausibility of the petitioner's assertion that he's credible if he had said six months versus three weeks or some other number, but he kept repeating the three. It had stuck in his mind. And the fact that he might have misspoken and said weeks instead of months or vice versa when, in fact, it really didn't matter because the dates of his arrest, he was very consistent. The facts concerning the phone call, concerning the police visit, concerning the detention, all completely credible and consistent. It's another example where a mistake in dates really doesn't reveal anything about the petitioner's fear for his safety. And I want to state one more thing about the passport issue, Your Honors, and that is this. There was some suggestion by the IJ that if the government issued him the passport, they're not looking for him. But that goes in contravention to a slew of cases from this Court that states that the ability or the possession of a passport validly issued from a country that an applicant fears persecution is not enough to find that the government is not looking for them. I will reserve the rest of my time. Thank you. Good morning, Mr. Hurley. Welcome back. Thank you very much. May it please the Court. My name is James Hurley, and I represent the Attorney General. This Court should deny the petition for review for two reasons. First, the agency properly denied Mr. Kumar's asylum and withholding of removal because he wasn't credible, and nothing in the record compels a different conclusion. Second, this Court should affirm the agency's alternative, separately dispositive alternative, holding that even if Mr. Kumar were considered credible, he would still not merit asylum or withholding because any possible presumption of a future persecution was rebutted by the fact that Mr. Kumar could relocate within India. So first, I'd like to address something that the opposing counsel said about the REAL-ID Act, whether or not it applied in this case. On the whole, it doesn't because Mr. Kumar applied for asylum in February of 2004, but there is one provision, INA 242b4d, which applies to corroborating evidence. That factor or that provision of the REAL-ID Act does apply in this case. So when the agency demanded that or requested that Mr. Kumar provide corroborating evidence, that provision applies in this case. Ginsburg. But if they were mistaken in finding him incredible and instead we found him credible, then he doesn't need corroboration, does he? Yeah. And that just applies to the whole credibility determination, whether or not, because that went into the IJ's determination that he was incredible. So the first point is that nothing in the record compels the conclusion that Mr. Kumar was credible in his case. He possessed the burden of proof under 8 CFR 1208.13 to establish eligibility for asylum. And the agency provided four reasons why he didn't meet his burden of proof. He didn't establish his identity, which is a key element in this case. He presented a passport and then he had the school records that had his father's multiple different names for his father. And the immigration judge asked him specifically about that. And he said, well, maybe this clerk mixed them up and he put Kumar, he put Singh. You know, it was a clerical error. Well, that's one explanation. Another explanation is that they weren't, they were fraudulent documents or they were, they didn't meet his burden of proof in this case. After the identity, he presented inconsistent documents, the school records. His testimony was inconsistent with regard to his application for when he applied for his passport in India. There was, at one point he said he applied for it and then he received it before his first arrest. And then another time he said he applied for it in 1998 and he didn't receive it until 2002. That's an inconsistency that's in the record. As far as the immigration's comment. The passport actually says 2002. In the record, if you look at it, I think it's on page, I'm not exactly sure where, but there's a date of issue. Right. That says, I believe it's March 6, 2002. It says 6-3-2002 and I think in India you do the day first and then the month and in that case. And then again, the three weeks versus three months, that is an inconsistency that is present in the record and the immigration judge was entitled to look at that. You probably wouldn't want to hang your case on that one, though, would you? No, but it's just one of the many cases or instances that there were holes in Mr. Kumar's case. And this Court has ruled that even if there are some aspects of the agency's finding that don't withstand review, if there's one finding that does withstand review, then the credibility determination is sustained. How do you distinguish the case, another Kumar case, when in 2006 this Court rejected an adverse credibility determination that was based upon the IJ's independent assessment that one of an asylum applicant's documents was likely a forgery? Isn't this a similar case? Well, you'd have to look at the specific facts of this case versus that, and I would distinguish that on the fact that the agency came up with four points that went to the heart of his claim, and maybe not everything that the agency cited is supported by substantial evidence, but when there are things that are, then the adverse credibility determination is sustained. Again, in Cower v. Gonzalez, this Court has held that the IJ is in the best position to determine the evidence that's put before her and that she doesn't have to abandon her common sense. In this case, she made the comment that, you know, she wasn't sure where these documents came from. I mean, she asked Mr. Kumar, you know, do you have an envelope to show, you know, you said these documents were sent to you from India. Do you have any postage that shows that it came from India? And he said, no, I don't have that. And, you know, she cited the country reports, the U.K. and the Danish report that said, you know, fraudulent documents are rife in Indian cases. So she made the comment that I'm not sure if these came from the U.S. or if they came from India, so she wasn't sure what to believe. She didn't really say they were fraudulent so much as that he had submitted a web of inconsistencies and no original documents as asked for in terms of bringing to the hearing. Exactly. Is that right? That's true. She didn't say these are fraudulent. I deny this. She just said that you didn't meet your burden of proof. These documents that you presented had inconsistent statements or reflected his father's names, provided different names. And she said, you know, I don't know what to believe here. And these documents go to the heart of the claim because his entire claim was based on his story that he had he was friends with Mr. Noor Ali, who was a classmate of his, and he was picked up by the police based on his friendship with him. And the agency said that these are the only tangible evidence that ties the petitioner and Mr. Noor Ali together, aside from the father's affidavit, which the immigration judge also found problems with. There were typos. The date was off when Mr. Kumar left India. So she found that the petitioner had not met his burden of proof, and she cited four reasons that went to the heart of the claim, and therefore that's why this Court should uphold the adverse credibility determination in this case. And as far as the alternative finding, that even if this Court were to consider him credible, he still would not meet his burden because he could safely relocate within India. It's true that he lived in Delhi for a time with family. He said that he wasn't disturbed there, but there's also evidence that his father remains at home and he hasn't been arrested since then. And his whole story before was that his father was picked up with him, and his father was also taken to jail, and bad things happened to him, too. But then he hasn't been disturbed since Mr. Kumar left. So if there are no further questions. I think not. Thank you. Thank you. Counsel, would you comment on the alternative holding that he could safely return to India and his father is still there?  Now, his father was arrested along with him in, I think, 2002. That was his second arrest. But the key distinguishing feature here is his father is not similarly situated to him. His father was not friends with Nur Ali. His father did not receive phone calls from Nur Ali. And his father, as far as the petitioner's testimony revealed, was not accused by the police of anything in particular. It was the petitioner to whom the police made specific accusations, suggesting an imputed political opinion based on his ties, that is, friendship, with Nur Ali. Had the police, had the petitioner testified, the police thought my father also knew Nur Ali and helped Nur Ali and was involved with militants in the Jammu Kashmir area, I think that would create a grayer situation. But here just the fact that he was arrested with him does not, in fact, put him in the same position as the petitioner, and he is not similarly situated. I'd like to make a comment about the passport and the lack of original. The petitioner explained that he obtained the passport with the help of an agent and that the agent took away the original when he had gotten to Canada. Therefore, petitioner should not be penalized for his inability to produce that original document. He also explained the unavailability of other originals. Had he had them, he would have brought them to court. Again, this is a pre-Real ID Act case. His credible testimony alone is sufficient to meet his burden of proof. No other corroborating documentation, including originals, are required in that case. Thank you. Thank you. The case just argued. Kumar v. Holder is submitted. Thank you.
judges: Hug, Nelson D. W., McKeown